DECISION AND JUDGMENT ENTRY
{¶ 1} This matter comes before the court on appeal from the Williams County Court of Common Pleas wherein appellant, Melvin D. Palmerton, was found guilty of two counts of rape. For the reasons that follow, we affirm his convictions.
 {¶ 2} On July 27, 2005, appellant was indicted on two counts of rape in violation of R.C. 2907.02(A)(1)(b) and felonies of the first degree. Each count carried the specification of a victim who is less than ten years of age. On August 15, 2005, appellant filed a motion to suppress evidence. Specifically, appellant sought suppression of State's exhibit 5, a transcript of a May 4, 2005 interview with appellant conducted by Williams County Sheriffs detective, Ken Jacob. In the interview, appellant states that he had oral and anal sex with his girlfriend's minor son.
 {¶ 3} A suppression hearing commenced on December 5, 2005. Appellant testified that in May 2005, Detective Jacob called him and asked him to come to the sheriffs department to talk about an item. Appellant knew Detective Jacob from appellant's job as an auto mechanic. Before taping his confession, Detective Jacob informed appellant that he had a right to a lawyer. Appellant testified that after hearing the rape allegations, he specifically told Detective Jacob that the interrogation needed to stop because he needed to talk to a lawyer. Detective Jacob asked appellant if he had an attorney in mind, to which appellant replied no. Detective Jacob then continued to question him. Appellant then asked Jacob if he should get a lawyer, and Jacob told him not to get a lawyer because he was obviously guilty and he would just "drag things out." Before the tape recorder was turned on, appellant again expressed concern about not having representation. According to appellant, Jacob told him it would be better if he just cooperated.
 {¶ 4} Detective Jacob testified that on May 3, 2005, he called appellant and asked him to come to his office. When appellant arrived on May 4, 2005, Jacob first advised appellant of the allegations against him. He then told appellant he was free to leave at any time, that he did not have to talk to Jacob and that he could have a lawyer present. Appellant agreed to speak to him. In the middle of the interview, appellant asked if he should have a lawyer present. Jacob told appellant that only appellant could make that decision.
 {¶ 5} On January 23, 2006, the trial court denied appellant's motion to suppress. A jury trial commenced on April 5, 2006. Twelve year-old Devin J. testified that appellant used to live with him and his mom, and he called appellant "Dave." He testified that on more than one occasion when he was left alone with appellant, appellant engaged in oral and anal sex with him and that appellant threatened to hurt him if he told anyone.
 {¶ 6} Pediatrician Dr. Randall Schlievert testified that he is a child sex abuse specialist. He testified that he examined Devin and found evidence of a blunt penetrating force to his anus.
 {¶ 7} Heidi Foster-Johnson testified that she is a licensed independent social worker with the state of Ohio. Devin was referred to her by his school when he began exhibiting behavioral problems. During his assessment, he disclosed to Foster-Johnson that he had suffered physical and sexual abuse when he was younger by someone named "Dave." Devin told her that Dave was his mother's ex-boyfriend. Foster-Johnson testified that based on her training and her therapy sessions with Devin, she believed he had been sexually abused.
 {¶ 8} Cindy Brinkman, a social worker with the Williams County Department of Job and Family Services, testified that she investigated Devin's allegations of sexual abuse. The jury heard an audio tape of Brinkman's interview with Devin that was conducted on April 22, 2005. In the interview, Devin told Brinkman that appellant lived with him for three years beginning when Devin was three. In graphic detail, Devin told Brinkman about being orally and anally raped by appellant. He also told her that appellant threatened to choke him if he told anyone about the abuse.
 {¶ 9} Detective Jacob took the stand to testify regarding the interview he conducted on May 4, 2005. Before turning on the tape recorder, Jacob testified that he informed appellant of the rape allegations. Appellant at first denied the allegations but then admitted they were true. The jury then heard an audiotape of the May 4, 2005 interview. In the interview, appellant states:
 {¶ 10} "I [sic] very confused emotionally and I was drunk and drinking a lot. I got Devin to do sexual things with me. * * * He gave me oral sex and then I had anal sex."
 {¶ 11} Appellant also told Jacob that he asked Devin not to tell anyone. Jacob again interviewed appellant on May 10, 2005. The jury also heard an audiotape of this interview wherein appellant tells Jacob that he sexually abused Devin on less than six occasions as opposed to five times a week as alleged by Devin.
 {¶ 12} Appellant took the stand in his defense. He testified that Detective Jacob told him that if he confessed, he would have no criminal record and may only get probation. He confessed to the crimes believing he would be allowed to go home to his wife and children. Appellant testified that he did not believe he had any choice other than to falsely confess to the allegations.
 {¶ 13} On April 6, 2006, the jury found appellant guilty on both counts. He was sentenced to two consecutive life terms in prison. Appellant now appeals setting forth the following assignments of error:
 {¶ 14} Appellant asserts the following assignments of error:
 {¶ 15} "I. The trial court erred in overruling appellant's motion to suppress."
 {¶ 16} "II. The verdict finding the appellant guilty of both counts of rape with specifications is against the manifest weight of the evidence.
 {¶ 17} "III. Trial counsel provided appellant with ineffective assistance of counsel by failing to seek more specific dates in the indictment and failing to pursue prior false rape accusations made by the victim."
 {¶ 18} In his first assignment of error, appellant contends that the court erred in denying his motion to suppress.
 {¶ 19} When considering a motion to suppress, the trial court assumes the role of the trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of a witness.State v. Mills (1992), 62 Ohio St.3d 357, 366. Consequently, in its review, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. State v.Guysinger (1993), 86 Ohio App.3d 592, 594.
 {¶ 20} If a suspect in a criminal investigation requests counsel during questioning, he may not be subject to further interrogation until an attorney is provided or the suspect initiates the discussion.Edwards v. Arizona (1981), 451 U.S. 477, 484-485, 101 S.Ct. 1880,1884-1885. However, "the invocation of the Miranda right to counsel `requires, at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney.'" State v. Davis (1994), 512 U.S. 452, 459, 114 S.Ct. 2350, 2355, quoting McNeil v. Wisconsin (1991), 501 U.S. 171, 178, 111 S.Ct. 2204,2209. Moreover, a suspect "must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." Davis at 459. In Davis, the court held that an accused's remark that "maybe I should talk to a lawyer" did not constitute a request for counsel. Id. at 462.
 {¶ 21} In the present case, the trial court chose to believe the testimony of Detective Jacob that appellant did not ask for an attorney. In State's exhibit 5, the transcript of appellant's May 4, 2005 interview with Detective Jacob, appellant acknowledges that he has a right to an attorney but he states he wishes to waive that right and agrees to talk with Jacob. Based on the foregoing, we find that appellant's right to counsel was not violated and the trial court did not err in denying appellant's motion to suppress. Appellant's first assignment of error is found not well-taken.
 {¶ 22} In his second assignment of error, appellant contends that his convictions are against the manifest weight of the evidence.
 {¶ 23} The "weight of the evidence" refers to the jury's resolution of conflicting testimony. State v. Thompkins, 78 Ohio St.3d 380, 387,1997-Ohio-52. In determining whether a verdict is against the manifest weight of the evidence, the appellate court sits as the "thirteenth juror" and " * * * weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered ." Id.
 {¶ 24} Jurors can pick and choose what they wish to believe. The jurors in this case obviously chose to believe the testimony of the state's witnesses. On review, we cannot say that in doing so the jury clearly lost its way or perpetrated a manifest miscarriage of justice. Accordingly, appellant's second assignment of error is not well-taken.
 {¶ 25} In his third assignment of error, appellant contends he was denied effective assistance of counsel. To establish an ineffective assistance of counsel claim, appellant must show that counsel's performance fell below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance. State v. Bradley (1989), 42 Ohio St.3d 136, paragraph two of the syllabus ( Strickland v. Washington (1984), 466 U.S. 668,104 S.Ct. 2052, 80 L.Ed.2d 674 followed.) "To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different."Bradley, supra, at paragraph three of the syllabus. Ohio law presumes a licensed attorney is competent. Vaughn v. Maxwell (1965),2 Ohio St.2d 299, 301. Further, there is "a strong presumption that counsel's conduct falls within
the wide range of reasonable professional assistance * * *."Bradley, supra, at 142, quoting Strickland, supra, at 689. Debatable strategic and tactical decisions may not form the basis of a claim for ineffective assistance of counsel. State v. Phillips, 74 Ohio St.3d 72,85, 1995-Ohio-171. Even if the wisdom of an approach is debatable, "debatable trial tactics" do not constitute ineffective assistance of counsel. Id . Finally, reviewing courts must not use hindsight to second-guess trial strategy, and must bear in mind that different trial counsel will often defend the same case in different manners.Strickland, supra at 689; State v. Keenan, 81 Ohio St.3d 133, 152,1998-Ohio-459.
 {¶ 26} Appellant first contends that counsel was ineffective in failing to fully explore the possibility that there was another perpetrator. Prior to trial, Devin's mother told prosecutors that Devin had accused two other individuals of abusing him. When questioned off the record about his statements, Devin told both the prosecutor and defense counsel that he had never accused anyone but appellant of abusing him. At trial, Devin's mother testified that Devin had accused another person in addition to appellant. Given the fact that appellant's confession was admitted into evidence, we cannot say that the outcome of the trial would have been different had counsel more aggressively pursued a line of questioning regarding Devin's other allegations.
 {¶ 27} Finally, appellant contends that counsel was ineffective in failing to seek more specificity in appellant's indictment. The indictment alleged that the crimes were committed "on or about 1995 and continuing to on or 1999." As discussed above, appellant was indicted on two counts of rape. The precise date and time of the offenses are not essential elements of that crime. Thus, the failure to provide exact dates and times in an indictment will generally not be fatal to the prosecution. State v. Sellards (1985) 17 Ohio St.3d 169, 171. This is especially true in cases involving child sexual abuse. See State v.Stepp (1997), 117 Ohio App. 3d 561,566, wherein the majority quotedState v. Barnecut (1988), 44 Ohio App.3d 149, at 151-152, for the proposition that these cases "often make it difficult to ascertain specific dates. The victims are young children who may reasonably be unable to remember exact times and dates of psychologically traumatic sexual abuses."
Accordingly, we do not find counsel to be ineffective for failing to demand a more specific indictment. Appellant's third assignment of error is found not well-taken.
 {¶ 28} On consideration whereof, we find that appellant was not prejudiced or prevented from having a fair trial and the judgment of the Williams County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App. R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Williams County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App. R. 27. See, also, 6th Dist. Loc. App. R. 4.